GUS FARRAR ET AL V. BOARD OF TRUSTEES OF THE EMPLOYEES RETIREMENT SYSTEM OF TEXAS ET AL.

No. A-3096. Decided November 7, 1951.
Rehearing·overruled December 12, 1951.
(243 S. W., 2d Series, 688.)

*Gus Farrar, W. Pirtle Watts* and *Scott Gaines,* all of Austin, for petitioners.

The Court of Civil Appeals erred in holding the act under consideration unconstitutional, as being in contravention of the amendment of Article III, section 48a, and Article XVI, sec. 62a. Brown County Water Imp. Dist. No. 1 v. Austin, M, & G. Co., 135 Texas 140, 138 S. W. 2d 523; Friedman v. American Surety Co. 137 Texas 149, 151 S. W. 2d 570; Mumme v. Marrs, 120 Texas 383, 40 S. W. 2d 31.

*Price Daniel,* Attorney General, *Chester E. Ollison, Clyde B. Kennerly,* and *Burnell Waldrep,* Assistants Attorneys General, for respondents.

Upon proposition that Court of Civil Appeals was correct in holding the act in question unconstitutional. Orndorff v. State, 108 S.W. 2d 206; Woods v. Riley, 147 Texas 586, 218 S.W. 2d 437.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is a mandamus suit filed by petitioners, Gus Farrar and Scott Gaines, for the benefit of themselves and others of their class similarly situated, to enforce certain rights which they assert they have by virtue of Senate Bill 438, Acts 51st Leg., Reg. Sess. 1949, ch. 454, p. 835, Art. 6228c, Vernon's Anno. Civ. Stat., in the Teachers Retirement and Employees Retirement Systems of Texas. A trial court judgment for petitioners was reversed and rendered by the Court of Civil Appeals, Chief Justice Archer dissenting. 236 S. W. 2d 663.

At the general election in 1936, the people adopted an amendment, designated as Sec. 48a, of Art. III, of the Constitution of Texas, and commonly called the Teachers Reirement Amendment, which provides:

"In addition to the powers given to the Legislature, under Section 48 of Article III, it shall have the right to levy taxes to provide a Retirement Fund for *persons employed* in public schools, colleges and universities, supported wholly or partly by the State; provided that the amount contributed by the State to such Retirement Fund shall equal the amount paid for the same purposes from the income of each such person shall not exceed at any time five per centum of the compensation paid to each such person by the State, and/or school districts, and shall in no one year exceed the sum of One Hundred Eighty (180.00) Dollars for any such person; provided no person shall be eligible for a pension under this Amendment who has not taught twenty years in the State of Texas, but shall be entitled to a refund of the moneys paid into the fund.

"All funds provided from the compensation of such persons, or by the State of Texas, for such Retirement Fund, as are received by the Treasury of the State of Texas, shall be invested in bonds of the United States, the State of Texas, or counties or cities of this State, or in bonds issued by any agency of the United States Government, the payment of the principal of and interest on which is guaranteed by the United States; provided that a sufficient amount of said funds shall be kept on hand to meet the immediate payment of the amounts that may become due each year under such retirement plan as may be provided by law; and *provided that the recipients of such retirement fund shall not be eligible for any other pension retirement funds or direct aid from the State of Texas, unless such retirement fund, contributed by the State, is released to the State of Texas, as a condition to receiving such other pension aid.*" (Italics ours.)

In 1937 the Legislature gave effect to this Amendment by Senate Bill 47, Acts 45th Leg., Reg. Sess., ch. 470, p. 1178, which, with subsequent amendments ,is now Art. 1922-1, Vernon's Anno. Civ. Stat. This statute defines those who are entitled to the benefits of the Teachers' Retirement System and prescribes how they may, at their option, become members of it. It directs that "taught", as used in Sec. 48a, Art. III, of the Constitution, supra, means "all regular services rendered by teachers and by auxiliary employees, contributing directly or indirectly to instruction offered by and in the public schools of

this State"; it defines "teacher" as a "person rendering service to organized public education in professional and business administration and supervision and in instruction, in public schools", and "auxiliary employee" as a person other than a "teacher", "employed on a fulltime regular salary basis by a common school district, independent school district, county school board, the Teacher Retirement System of Texas, State Board of Education, State Department of Education, boards or regents of colleges and universities, and any other legally constituted board or agency of an educational institution or organization supported wholly or partly by the State."

A member's benefits are figured on basis of his years of "creditable service", which is the sum of his "prior service" and his "membership service", the latter being service rendered, either as teacher or auxiliary, while a member, and the former being such service rendered before membership in the system.

At a general election held in 1946 there was adopted an amendment which is Sec. 62, of Art. XVI, of the Texas Constitution, authorizing the Legislature to levy taxes to provide a "Retirement, Disability and Death Compensation Fund for the appointive officers and employees of the State". Its language is the same, in substance, as that of the Teachers' Amendment above quoted, and it carries this proviso: *"And provided that the recipients of benefits from said Fund, shall not be eligible for any other pension retirement funds or direct aid from the State of Texas, unless the Fund, the creation of which is provided for herein, contributed by the State, is released to the State of Texas as a condition to receiving such other pension aid."* (Italics ours.)

This amendment was made effective by Acts 50th Leg., Reg. Sess., ch. 352, p. 697, which, as amended, appears as Art. 6228a, Vernon's Anno. Civ. Stat. The statute defines an "employee" as "any regularly appointed officer or employee in a department of the State" but it excludes "any person who is covered by the Teacher Retirement System of the State of Texas or any retirement system supported with State funds other than the Texas Employees Retirement System". As under the Teacher Amendment, supra, the statute allows benefits for "creditable service", which means "membership service" plus "prior service". "Prior service" means service *rendered as an employee,* "as defined in this Act", prior to establishment of the Employees Retirement System.

Then, in 1949, came Art. 6228c, supra, which gave rise to

this suit. That act declares that any person who is a member of either the Teacher Retirement System or the Employees Retirement System and "had also been a member of said system for a period of two (2) years prior to September 1, 1949, and/or if any person became a member of either system after September 1, 1947, but before September 1, 1949, and continued in such employment for a period of five (5) consecutive years, then such member shall be entitled to receive credit and resulting benefits for any and all prior service creditable as prior service for employment under the provisions of either of said acts and the respective Boards of Trustees are hereby instructed to review the prior service of the employees who were members on September 1, 1949, under either act to permit said members to claim such additional prior service as provided herein and to include same in the prior service certificates to be issued". Then the article provides that any person who accumulates *creditable service between both systems may retire with joint creditable service between the two systems* after completing, under conditions named, 20, 25 or 30 years of such service. To accomplish that, the statute "authorized" the Comptroller, upon request by one system desiring to make its funds available through the other system, to *transfer accrued funds and interest from one system to the other for eventful disbursement to the member concerned so as to effectuate the purposes of the Act.*

Mr. Farrar, Chief Clerk in the Comptroller's department, has been a state employee continuously since Oct. 1, 1931, and has been a member of the Employees Retirement System since Sept. 1, 1947, regularly making his contribution to its fund as the law requires. From 1910 to 1918 he taught in the common school districts of Texas. He has never been a member of the Teacher Retirement System, so he has never made any contribution to its fund, nor has he waived any rights which he may have in it. However, his service as a teacher is creditable as prior service under the Teacher Retirement System.

Mr. Gaines has been continuously employed by the Board of Regents of the University of Texas since May 1, 1938, and has continuously been a member of the Teacher Retirement System and has regularly made his contribution to its fund as the law requires. He was Assistant Attorney General from Jan. 1, 1931, to Apr. 30, 1938, which service is creditable as prior service under the Employees Retirement System. However, he has never been a member of the latter system, and has made no payments to its funds; but he has waived no rights which he may have in it.

As a qualified member of the Employees Retirement System and invoking the provisions of Art. 6228c, supra, Mr. Farrar duly requested the Board of Trustees of that system to credit him, as such member, with his six years of prior service as a teacher and to amend his prior service certificate accordingly. In the same manner Mr. Gaines, as a qualified member of the Teacher Retirement System, requested the Board of Trustees of that system to credit him, as such member, with his seven years and four months as a state employee and to amend his prior service certificate accordingly.

Those requests were refused by the respective boards on the ground that Art. 6228c, supra, is unconstitutional. Thereupon this suit was filed by petitioners against the two Boards, their chairmen and executive secretaries, respondents, praying that mandamus issue to compel respondents "to review, allow and credit any and all prior service to which relators and each of them, together with other persons similarly situated, are rightfully entitled under said Act as members in good standing of either of two said Retirement Systems and to issue a proper certificate evidencing such credit for additional prior service under said law."

■ A rule of last resort for the construction of constitutional amendments is that if there be inconsistencies or conflict between them the last must be given effect as the latest expression of the will of the people. Gulf, C. & S. F. Ry. Co. v. Rambolt, 67 Texas, 654, 4 S. W. 356. And the rule obtains although the terms of the first amendment may remain unaltered by any language of the second. 11 Am. Jur., Constitutional Law, sec. 54, p. 664.

We see no conflict between the two amendments under consideration. In fact, petitioners do not seem seriously to contend that there is. The most they say is that the Teacher Amendment was "changed and broadened" by the Employees Amendment, by which they mean that the provisions of the latter "are broad enough within themselves to have authorized the establishment of a single retirement system for all the employees of the State, including teachers," because "it is only when this Amendment is considered in connection with the Teacher Amendment that teachers may be excepted from it."

But our problem is not that easy. What we have here is two amendments as between which there is no inconsistency or conflict, so it is our duty so to construe them as to give effect to

both. And our controlling guide in giving them effect is the intention of their makers and adopters. 11 Am. Jur., Const. Law, sec. 61, p. 675.

■ When the people adopted the Teachers Amendment they said the legislature could levy taxes and thereby provide a retirement fund for *persons employed in public schools, colleges and universities supported in whole or in part by the state,* or, as later expressed, for persons who have taught 20 years in the State of Texas. To provide that fund they directed that the State would match watever amount should be taken from the salaries of the persons affected not to exceed $180 per year per person and that the fund so created, except such amounts as might be necessary for current purposes, should be invested in bonds of the United States or any of its agencies, the State of Texas or any county or city of the State of Texas. By those directions they fixed the limits of the Legislature's power both in the creation and expenditure of a teachers' retirement fund. And, giving the language the most liberal construction possible, the adopters limited its benefits to such persons as "are employed in public schools, colleges and universities supported in whole or in part by the State of Texas"—that is, as the Legislature later said in Art. 1922-1, supra, to actual teachers and to other persons "employed on a full-time regular salary basis by a common school district, independent school district, county school board, the Teacher Retirement System of Texas, State Board of Education, State Department of Education, boards of regents of colleges and universities, and any other legally constituted board or agency of an educational institution or organization supported wholly or partly by the State." Its benefits were thus dedicated to educational workers *to keep them* in that field, to give them less incentive to quit that work for perhaps more remunerative employment in other fields including any other sort of public service. As stated by this court in Woods v. Reilly, 147 Texas 586, 218 S. W. 2d 437, "the plain intent" of the Teachers Amendment "was to provide security for teachers and create an incentive to encourage qualified persons *to become and remain teachers* in the public schools of Texas." Or, as said by the Supreme Court of Utah in regard to a similar program in that state, its purpose is *"to attract to and retain in* our public school systems qualified and experienced teachers." Gubler v. Utah State Teachers Retirement Board, 113 Utah 188, 192 Pac. 2d 580. (Italics ours.) This purpose is so strong that past service credit for service performed as *teachers* before retirement provisions were adopted has been held valid because it is an inducement for the seasoned and ex-

perienced teachers *to remain in the service* and so give the public the benefit of their exeperience. State ex rel Dudgeon v. Levitan, 181 Wis., 326, 328, 193 N. W. 499. In view of these expressions, it simply cannot be said that when they adopted the Teachers Amendment the people meant to extend its benefits to anybody but "teachers"; to suppose that they meant to give teachers credit for prior service in some other field of public service is to ignore or misunderstand the dominant purpose of the Amendment itself.

In that situation and ten years later, the people adopted the Employees Retirement Amendment. Under its terms and wholly ignoring the Teachers Amendment which had then been in operation for several years, the voters said the Legislature could levy taxes and thereby provide a retirement fund for *the appointive officers and employees of the state,* to create which fund the state would contribute an amount equal to whatever should be taken from the salaries of the persons affected not to exceed $180 per year per person. Then, except for such amount as might be necessary for current needs, they directed that this fund should be invested in bonds of the United States or its designated agencies or in bonds of the State of Texas or of the counties and cities of Texas.

■ Construing that amendment in the light of its purpose, we have no doubt that, just as they had already done for the teachers, the people meant to limit the benefits of that fund to appointed officers and employees of the State; because only thus could effect be given to the dominant purpose of the Amendment to encourage seasoned and experienced officers and employees to remain at their posts. But that they did not intend to include "teachers" in this amendment seems certain for several reasons: teachers had already been provided for on equal terms in the other amendment, and the language of the employees Amendment carries not the slightest hint that the Teachers Amendment is in any manner repealed, altered or "broadened"; each amendment declares that no recipient of its benefits can ever be eligible for benefits from any other retirement fund unless and until he releases to the state such part of the fund from which he is already receiving benefits as may have been provided by the state; if persons could transfer from teacher to employee or from employee to teacher carrying with them at each transfer their accumulated service benefits under both systems up to the time of their retirement, the dominant purpose of both amendments (that teachers re-

main teachers and employees remain employees) would be defeated; and only by this construction can full effect be given to both amendments. The Legislature, when it passed the enabling act in 1947 following the adoption of the Employees Amendment, gave the two amendments this very construction when it defined "employee" as any regularly appointed officer or employee in a department of the state and then excluded from the definition "any person who is covered by the Teacher Retirement System of the State of Texas or any retirement system supported with state funds other than the Texas Employees Retirement System." Acts 50th Leg., Reg. Sess., ch. 352, p. 697, supra.

■ But petitioners insist that as to them and others of their class the application of Art. 6228c, supra, would not result in any transfer of funds from one system to the other because no one of them has ever been a member of any other system than the respective system of which he is presently a member. Even so, if one's retirement benefits as an employee are to be based in part on services rendered years ago as a teacher, the Employees Retirement Fund will be to that extent depleted. That result would not serve the dominant purpose of the Employees Amendment as above discussed; in fact, it would be antagonistic to it. And the same would be true as to the Teachers Amendment if one's benefits thereunder are based on and paid in part for, service as an employee rendered long before that amendment was adopted. Sec. 48a, of Art. III, of the Constitution, supra, clearly restricts teacher retirement benefits to teachers, while Sec. 62, of Art. XVI, supra, with equal clarity restricts employee retirement benefits to employees. It follows that neither can be suffered to encroach upon the other; nor can any other retirement system be permitted to encroach upon either of them, until the Constitution is amended to permit it.

What we have held cannot adversely affect the rights of a teacher or employee who may have been erroneously or inadvertently placed in one system when he should have been put in the other. If any one has been so classified and as a result made his payments into the wrong fund there is no reason why such payments together with the state's matching contributions cannot be transferred into the other fund. For example, by S. B. 393, Acts 52nd Leg., Reg. Sess., ch. 175, p. 296, the State School for the Deaf is declared to be an educational institution and its exclusive control is transferred to the Central Education Agency of Texas. It may be that some or all of the em-

ployees of the school, other than actual teachers, have been carried as members of the Employees Retirement System although they were in fact auxiliary employees of the school as defined by Art. 2922-1, supra, and as contemplated by Sec. 48a, Art. III, of the Constitution itself. In that situation their service certificates may properly be corrected and their accrued funds and interests transferred from the Employees Retirement System to the Teachers Retirement System. We think the proper officers of the two systems, with the advice and assistance of the Attorney General, should be able to correct any and all such errors. Certainly nothing in this opinion will prevent their doing so.

We are convinced that the judgment of the Court of Civil Appeals is correct, hence it is affirmed.

Opinion delivered November 7, 1951. Associate Justice Wilson concurs as to Petitioner Gaines and dissents as to Petitioner Farrar.

Rehearing overruled December 12, 1951.